UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L.W. PITTMAN, JR.,

    Petitioner,                                  Civil No. 2:13-CV-13126
                                                    Honorable Patrick J. Duggan

v.

DUNCAN MACLAREN,

    Respondent,
_____/

**<u>OPINION AND ORDER DENYING THE PETITION FOR WRIT OF
HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF
APPEALABILITY</u>**

Petitioner L.W. Pittman, Jr. ("Pittman"), presently incarcerated at the Michigan Reformatory in Ionia, Michigan, seeks issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed through attorney Linda D. Ashford, Pittman challenges his April 2010 convictions stemming from eight counts of first-degree criminal sexual conduct in violation of Michigan Compiled Laws § 750.520b(1)(a). Pittman's petition raises a single claim of ineffective assistance of counsel, based on questions his trial counsel asked during direct and cross-examination which "opened the door" to the facts and circumstances of Pittman's prior plea-based conviction for attempted second-degree criminal sexual conduct. For the reasons that follow, the Court denies

Pittman's request for habeas relief and declines to issue a certificate of appealability.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pittman was convicted of eight counts of first-degree criminal sexual conduct following a bench trial in the Circuit Court for Wayne County, Michigan. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1):

> Defendant's convictions arise from an attack on the 11-year-old daughter of defendant's sexual partner while the victim's mother was not in the house. The victim promptly reported both the assault and defendant's identity as the perpetrator to a neighbor, her mother, a nurse, and a police officer. A physical examination revealed recent physical trauma to the victim's vagina. Defendant denied molesting the victim, but claimed that she told him that another one of her mother's sexual partners had "messed with" her.

*People v. Pittman*, No. 298680, 2011 WL 4503167, at *1 (Mich. Ct. App. Sept. 29, 2011) (per curiam) (unpublished).

After he was convicted and sentenced, Pittman filed a direct appeal in the Michigan Court of Appeals raising a single claim of ineffective assistance of counsel. During trial, Pittman's counsel elicited testimony from both the victim's mother and Pittman concerning Pittman's prior plea-based conviction for attempted second-degree criminal sexual conduct involving a much younger complainant. On appeal, Pittman alleged that his counsel's questions "opened the

2

door" to damaging information which irreparably harmed his case by bolstering the victim's testimony.[1] In rejecting Pittman's claim of ineffective assistance of counsel, the Michigan Court of Appeals explained:

> Defendant's ineffective assistance of counsel claim involves defense counsel's examination of witnesses. In general, the questioning of witnesses is a matter of trial strategy that this Court will not second-guess. The record clearly demonstrates that defense counsel made a strategic decision to question the victim's mother and defendant about the circumstances surrounding defendant's prior conviction. The context of the questioning indicates that defense counsel was attempting to use the prior accusations and conviction to explain defendant's behavior on the night of the charged offense.

*Id*. at *2.

After concluding that counsel's questioning involved a strategic decision, the court noted that "[w]hether this strategy may be considered sound depends on the apparent benefit to be gained compared to the potential prejudice that might result." *Id.* In weighing the potential benefits and potential harm, the court characterized "the risk that the trier of fact would improperly use the information to evaluate [Pittman's] guilt" as "minimal." *Id.* The court first reasoned that judges are less likely than jurors "to be deflected from the task of fact-finding by prejudicial considerations[.]" *Id.* (citation omitted). Additionally, because the prosecution had filed a motion *in limine* seeking to admit Pittman's prior

---

[1] Because Pittman raised this issue in the Michigan Court of Appeals, his claim on habeas review has been "adjudicate[ed] of his claims on the merits" for purposes of 28 U.S.C. § 2254(d).

conviction (a motion which was ultimately withdrawn), counsel's questioning "did not cause the court to become aware of the conviction, but rather gave [Pittman, who testified in his defense,] the opportunity to assert his innocence of t[he prior] offense, provide a reason for his plea, and use the information to explain his conduct[.]" *Id.* Ultimately, the court concluded that Pittman failed to "overcome the presumption that" his trial counsel's strategy was sound. *Id.*

With regard to prejudice, the Michigan Court of Appeals referenced the strength of the evidence against Pittman before concluding that "there is no reason to believe that the testimony concerning [Pittman's] prior conviction had any effect on the trial court's determination that the victim and other prosecution witnesses were all credible." *Id.* at *2-3.

The Michigan Supreme Court denied Pittman leave to appeal. *People v. Pittman*, 491 Mich. 909, 810 N.W.2d 584 (2012). Pittman did not appeal to the Supreme Court of the United States, nor did he seek post-conviction relief in the state courts.

Pittman now seeks the issuance of a writ of habeas corpus.

## II. LEGAL STANDARD

Review of Pittman's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub. L. No. 104-132, 110 Stat. 1214.

Pursuant to the AEDPA, Pittman is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In elaborating on the meanings of the two clauses contained in § 2254(d)(1), the Supreme Court has provided:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000).

The AEDPA establishes a highly deferential standard which "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010) (quoting *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (per curiam)). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

5

*Williams,* 529 U.S. at 411, 120 S. Ct. at 1522. Thus, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.___, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)).

### III.   ANALYSIS

The sole claim raised in Pittman's habeas petition is that he was denied his constitutional right to the effective assistance of counsel when his trial counsel elicited information from both Pittman and the victim's mother concerning Pittman's prior plea-based conviction for attempted second-degree criminal sexual conduct.

The Sixth Amendment to the United States Constitution guarantees criminal defendants "the right to the effective assistance of counsel[,]" *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984) (citation and internal quotation marks omitted), not the flawless assistance of counsel, *Smith v. Mitchell*, 348 F.3d 177, 206 (6th Cir. 2003) ("After all, the constitutional right at issue here is ultimately the right to a fair trial, not to perfect representation.").

To show that he was denied the effective assistance of counsel under federal constitutional standards, Pittman must satisfy *Strickland*'s two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious

> that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687, 104 S. Ct at 2064.

To demonstrate counsel's deficient performance, Pittman "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688, 104 S. Ct. at 2064. Objective reasonableness is defined by reference to prevailing professional norms. *Rickman v. Bell*, 131 F.3d 1150, 1154 (6th Cir. 1997) (citing *Strickland*, 466 U.S. at 668, 104 S. Ct. at 2065). As indicated by the Supreme Court, judicial scrutiny of counsel's performance must be "highly deferential[,]" and courts must indulge the strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689, 690, 104 S. Ct. at 2065, 2066.

If successful in demonstrating counsel's deficient performance, Pittman must then establish prejudice, which requires "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694, 104 S. Ct. at 2068. A reasonable probability is "'a probability sufficient to undermine confidence in the outcome' – certainty of a different outcome is not required." *Rayburn v. United*

7

*States*, 489 F. App'x 871, 878 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

When confronted with a case containing the procedural posture presented here – a federal district court reviewing an ineffective assistance of counsel claim adjudicated on the merits and denied by a state court by way of federal habeas review – courts must not conflate the "highly deferential" standards independently created by *Strickland* and § 2254(d). *Harrington*, 131 S. Ct. at 788; *id.* at 785 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."). Instead, "when the two [standards] apply in tandem," a federal district court must apply a "doubly" deferential standard. *Id.* at 788 (citation omitted); *id.* ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Thus, the Court's task today is not to consider *ab initio* whether Pittman's counsel satisfied the requirements of *Strickland*; rather, the Court must decide whether the state court's *Strickland* determination was "contrary to, or involved an unreasonable application of, clearly established Federal law[.]" 28 U.S.C. § 2254(d)(1); *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420 (2009) ("The question is not whether a federal court believes the state

court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold.") (internal quotation marks and quotation omitted).

Pittman contends that his trial counsel was ineffective for eliciting testimony from Pittman and the victim's mother concerning Pittman's prior plea-based conviction for attempted criminal sexual conduct in the second degree as this "opened the door" to prejudicial testimony. According to Pittman, this prejudicial testimony deprived him of a fair trial. The Court does not agree.

The Michigan Court of Appeals rejected Pitman's claim of ineffective assistance of counsel concluding that Pittman's defense counsel made a strategic decision to elicit the challenged testimony and that the testimony did not prejudice Pittman. *Pittman*, No. 298680, 2011 WL 4503167, at *2-*3. The state court's evaluation of this claim was neither contrary to nor an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts.

Pittman fails to overcome the presumption that counsel's decision to elicit testimony concerning his prior conviction was a valid trial strategy, as Pittman concedes in his brief that his defense counsel attempted "to use [Pittman's] prior conviction to suggest that [Pittman] was set up by the [victim's] mother in his prior case, and that he was [similarly] being set up . . . in this case[.]" (Pet'r's Br. 20.) Counsel's performance in eliciting prejudicial testimony is not deficient where

9

such information is used as part of a legitimate strategy to cast doubt on a witness testimony.  *Campbell v. United States*, 364 F.3d 727, 734-35 (6th Cir. 2004).

Further, and as noted by the state court, the potential prejudice resulting from the admission of otherwise excludable evidence is lessened when the determination of guilt was made by "an experienced [trial] judge[.]"  *United States v. Ziska*, 267 F. App'x 717, 719 (9th Cir. 2008) (citation omitted).  In a non-jury trial, "the prejudicial impact of erroneously admitted evidence is . . . presumed to be substantially less than it might have been in a trial before a jury."  *United States v. Nicholson*, 492 F.2d 124 (5th Cir. 1974) (citation omitted); *United States v. McCarthy*, 470 F.2d 222, 224 (6th Cir. 1972) (noting that in a non-jury trial, a judge is presumed to consider only admissible testimonial evidence).  That Pittman was tried by the court without a jury militated against the potentially harmful impact of prejudicial testimony, thereby bolstering the state court's determination that trial counsel's strategy was sound.[2]

---

[2] The Michigan Court of Appeals also noted that Pittman's prior conviction was the subject of a pre-trial motion and that the judge, therefore, was already aware of the prior conviction, further lessening any prejudice resulting from the testimony.  Petitioner argues that "nothing in the trial court's April 30, 2010[] findings of fact and conclusions of law indicates that the judge . . . recalled the pretrial motion that was filed months earlier."  (Pet'r's Br. 21.)  The Court is not at all persuaded by this argument as the reverse – that the judge recalled the earlier motion but deemed it unnecessary to her findings of fact and conclusions of law because the prosecution ultimately withdrew the motion – is equally plausible.

10

Accordingly, this Court is unable to conclude that the Michigan Court of Appeals erred in its performance analysis under *Strickland*.

Assuming arguendo that Pittman's counsel rendered inadequate assistance, trial counsel's decision to elicit the challenged testimony did not prejudice Pittman in such a manner as to support an ineffective assistance of counsel claim primarily because this testimony was neither the strongest evidence nor the only evidence of Pittman's guilt of the charged offense. *Bridges v. Cason,* 198 F. App'x 491, 494-95 (6th Cir. 2006) (holding that although trial counsel performed deficiently by opening the door, for no sound strategic reason, to the otherwise inadmissible confession of a co-defendant, the admission did not prejudice defendant because the confession was neither the only evidence nor the strongest evidence of defendant's guilt); *Salem v. Yukins,* 414 F. Supp. 2d 687, 699 (E.D. Mich. 2006) (finding that defense counsel's opening the door to questions regarding the habeas petitioner's prior drug conviction did not prejudice petitioner in light of the overwhelming evidence of her guilt).

In this case, the evidence against Pittman was overwhelming. Despite the lack of corroborating DNA evidence, Pittman never disputed having unimpeded access to the victim prior to the reporting of the assault. The victim, who knew Pittman, testified clearly and in great detail about the sexual assault and her testimony was consistent with her previous accounts of what transpired. After the

11

victim had been sexually assaulted, she ran to a neighbor's house and informed her of the attack. Both the neighbor and the victim's mother noted blood on the victim's thighs and robe. The victim went to the hospital, where she received a pelvic examination that confirmed that she had been sexually assaulted and she identified Pittman as the perpetrator to the examining nurse. The trial court found this testimony to be both "compelling and truthful." Although Pittman suggests that the trial judge used the prior conviction to find him guilty based on propensity, the court's mention of the prior conviction was in fact rather limited and was confined to the assessment of Pittman's credibility.

In light of the overwhelming evidence of guilt, Pittman has not shown that the Michigan Court of Appeals' decision that he was not prejudiced by the elicitation of testimony concerning his prior conviction was either contrary to or involved an unreasonable application of Supreme Court precedent. He is therefore not entitled to habeas relief.

## IV. CERTIFICATE OF APPEALABILITY

To the extent Pittman intends to appeal this Court's decision, he must first obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). Section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When a district court denies a habeas petition on the merits of the

claims presented, a certificate may issue if the applicant demonstrates that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000).  This Court has evaluated Pittman's claims on the merits and cannot conclude that jurists of reason would find the correctness of its assessment of Pittman's claims debatable.

### V.   CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that Pittman is not entitled to habeas relief pursuant to § 2254 on the ground asserted in his petition and further concludes that a certificate of appealability shall not issue.

Accordingly,

**IT IS ORDERED** that Pittman's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED;**

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue a **CERTIFICATE OF APPEALABILITY**.

Dated:  July 10, 2014

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

**Linda D. Ashford, Esq.**
**Laura Moody, A.A.G.**